# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| LITTLE CAESAR ENTERPRISES, INC., <br>   a Michigan corporation, and <br> LC TRADEMARKS, INC., <br>   a Michigan corporation, <br><br>         Plaintiffs, <br><br>     v. <br><br> GREYSTONE HOLDINGS, LLC, <br>   a Texas limited liability company, <br> LC 7TH STREET, LLC, <br>   a Texas limited liability company, <br> LC OAKHILL, LLC, <br>   a Texas limited liability company, <br> JEFFREY PHILLIPS, <br>   a Texas citizen, and <br> ALEXANDRA PHILLIPS, <br>   a Texas citizen, <br><br>         Defendants. | Case No. _____ |

## COMPLAINT

Plaintiffs Little Caesar Enterprises, Inc. and LC Trademarks, Inc. (collectively, "Little Caesar") bring this action for breach of contract, trademark infringement, unfair competition, and trade dress infringement. Little Caesar has terminated its Franchise Agreements with Defendants based on Defendants'

multiple breaches of those agreements. Yet Defendants continue to hold themselves out as LITTLE CAESARS franchisees.

Defendants' continued, unauthorized use and enjoyment of Little Caesar's confidential business system and the LITTLE CAESARS trademarks, trade name, and trade dress breaches the Franchise Agreements and violates the Lanham Act, 15 U.S.C. §§ 1114, *et seq*. Little Caesar seeks injunctive, monetary, and other relief against Defendants for the reasons set forth below.

## THE PARTIES

1.      Plaintiff Little Caesar Enterprises, Inc. is a Michigan corporation with its principal place of business in Detroit, Michigan. It is engaged in the business of franchising independent businesspersons to operate LITTLE CAESARS restaurants throughout the United States. Little Caesar's franchisees are licensed to use the LITTLE CAESARS trade name, trademarks, and service marks and to operate under the LITTLE CAESARS System, which involves the production, merchandising, and sale of pizza, chicken wings, and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2.      Plaintiff LC Trademarks, Inc. is a Michigan corporation with its principal place of business in Detroit, Michigan. LC Trademarks, Inc. is the owner

of the trademark, service mark, and trade name "LITTLE CAESARS," and related marks. It licenses these marks to Plaintiff Little Caesar Enterprises, Inc., which in turn licenses them to LITTLE CAESARS franchisees.

3.      Defendant Greystone Holdings, LLC is a Texas limited liability company with a principal place of business in Austin, Texas. Upon information and belief, each of Greystone Holdings, LLC's members is a citizen and resident of the state of Texas. Greystone Holdings, LLC owned and operated five LITTLE CAESARS franchises located in and around Austin, Texas (Store Nos. 1350-001, 1350-002, 1350-004, 1350-005, and 1350-006), pursuant to Franchise Agreements with Little Caesar.

4.      Defendant LC 7th St, LLC is a Texas limited liability company with a principal place of business in Austin, Texas. Upon information and belief, each of LC 7th Street, LLC's members is a citizen and resident of the state of Texas. LC 7th Street, LLC owned and operated a LITTLE CAESARS franchise located in Austin, Texas (Store No. 1350-007), pursuant to a Franchise Agreement with Little Caesar.

5.      Defendant LC Oakhill, LLC is a Texas limited liability company with a principal place of business in Austin, Texas. Upon information and belief, each of LC Oakhill, LLC's members is a citizen and resident of the state of Texas. LC Oakhill, LLC owned and operated a LITTLE CAESARS franchise located in

Austin, Texas (Store No. 1350-008), pursuant to a Franchise Agreement with Little Caesar.

6.     Defendant Jeffrey Phillips is a natural person and a citizen and resident of the State of Texas. Upon information and belief, he is a member of each of the defendant corporations. He personally guaranteed the obligations of those entities under their Franchise Agreements with Little Caesar, pursuant to executed personal guarantees.

7.     Defendant Alexandra Phillips is a natural person and a citizen and resident of the State of Texas. She personally guaranteed the obligations of Defendant LC Oakhill, LLC under its Franchise Agreement with Little Caesar, pursuant to an executed personal guarantee. Defendants Greystone Holdings, LLC; LC 7th St, LLC; LC Oakhill, LLC; Jeffrey Phillips, and Alexandra Phillips are collectively referred to as the "Phillipses."

## JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116  & 1121; and 28 U.S.C. §§ 1331, 1332, 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of interest and costs, and no defendant shares a state of citizenship with any plaintiff.

9. This Court has *in personam* jurisdiction over Defendants because they conduct business in this district and the events giving rise to Little Caesar's claims occurred in this district.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and the venue provision contained in the parties' Franchise Agreements.

## BACKGROUND FACTS

### Little Caesar

11. Plaintiff Little Caesar Enterprises, Inc. is the franchisor of the LITTLE CAESARS System.

12. Plaintiff LC Trademarks, Inc. owns numerous federal registrations for the mark "LITTLE CAESARS" and related marks. Among those registrations are Registration Nos. 2036763, 2028607, 2259637, 3904450, 3925216, and others. Each of these registrations is in full force and effect.

13. Plaintiff Little Caesar Enterprises, Inc. has the exclusive license to use and to license others to use the LITTLE CAESARS marks and trade name and has used them at all times relevant to this action to identify its restaurants and the pizza and other products associated with those restaurants.

14. The trade dress of LITTLE CAESARS restaurants includes the signage, lettering style, color scheme, exterior appearance, floor plans, and décor (including, without limitation, menu boards, display racks, and servers' uniforms)

that are featured at the restaurants operated by LITTLE CAESARS franchisees.

15.    The LITTLE CAESARS trade dress consists of arbitrary embellishments primarily adopted for the purpose of identification and individuality, and is nonfunctional.

16.    The LITTLE CAESARS trademarks and trade dress are utilized in interstate commerce.

### The Parties' Rights And Obligations Under The Franchise Agreements

17.    The Phillipses were formerly licensed to use the LITTLE CAESARS trademarks, trade name, trade dress, and business system in accordance with the terms of their Franchise Agreements with Little Caesar.

18.    Among those terms was the obligation to comply with Little Caesar's recordkeeping and reporting requirements, including but not limited to the obligations to:

a.    Prepare and preserve for at least four years, complete and accurate books, records, and accounts in accordance with generally accepted accounting principles and in the form and manner prescribed by Little Caesar. (Franchise Agreement § 11.1.)[1]

---

[1]    Because the Phillipses' Franchise Agreements were executed in different years, the wording of and/or the section numbers for the provisions cited in this Complaint may vary from one Franchise Agreement to the other; however, the provisions are materially the same for the purposes of the Complaint. For ease of reference, the citations contained in this Complaint can

b.    Provide Little Caesar with copies of state and federal tax returns related to their operation of their LITTLE CAESARS franchises, within five days of their filing. (*Id.* § 11.2.)

c.    Provide Little Caesar, on forms and in the manner prescribed by Little Caesar: (i) weekly reports of gross sales; (ii) financial statements on a quarterly basis, within thirty days after the end of each quarter; and (iii) such other data and information regarding the operation of their LITTLE CAESARS franchises as Little Caesar may require, within the time frames established by Little Caesar. (*Id.* § 11.3.)

19.    Furthermore, the Phillipses agreed that Little Caesar had the right to audit the books and records of their LITTLE CAESARS franchises at any time. (*Id.* § 11.5.)

20.    In addition to agreeing to comply with Little Caesar's recordkeeping and reporting requirements, the Phillipses agreed to operate their franchised restaurants in accordance with the operational standards, procedures, and specifications prescribed by Little Caesar. Relevant Franchise Agreement provisions in that regard include, but are not limited to, the following:

---

be found in the Phillipses' most recent Franchise Agreement (the Franchise Agreement for Franchise No. 1350-008).

a.    **5.1    Importance of Compliance with System Standards.** Franchisee understands and acknowledges that every detail of the System and the Restaurant is essential to Franchisee, Little Caesar, and other System franchisees in order to (i) develop and maintain quality and uniform operating standards, (ii) increase the demand for the products and services sold by all franchisees operating under the System, and (iii) protect Little Caesar's reputation and goodwill. Franchisee shall maintain Little Caesar's high standards with respect to facilities, services, products, and operations. . . .

b.    **5.3    Conformance to System Standards.** To insure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, procedures, and specifications as Little Caesar may from time to time prescribe in the Manuals or otherwise in writing. Franchisee shall refrain from (a) deviating from such methods, standards, procedures, and specifications without Little Caesar's prior written consent, and (b) otherwise operating in any manner which reflects adversely on the Proprietary Marks or the System. Among other things:

c.    5.3.1 Franchisee shall maintain in sufficient supply, and use at all times, only such products, equipment, materials, signs, menu items, ingredients, supplies, and paper goods, as conform to Little Caesar standards and specifications; and shall refrain from using non-conforming items;

      d.    5.3.2  Franchisee shall sell or offer for sale only such products and services as (a) meet Little Caesar's standards of quality, (b) have been expressly approved for sale in writing by Little Caesar, and (c) have been prepared in accordance with Little Caesar's methods and techniques for product preparation. Franchisee shall sell or offer for sale such products and services required by Little Caesar in the Manuals or otherwise in writing as being part of the System. Franchisee shall not deviate from Little Caesar's methods, standards, procedures, and specifications regarding, without limitation, ingredients, recipes, methods of preparation and service, and weight and quality of products served. . . .

      e.    **5.5**    **Maintenance of Restaurant Premises.** Franchisee shall maintain the Restaurant premises and adjacent public areas in a clean, orderly, and excellent condition and in excellent appearance to the public. . . .

21.    Under their Franchise Agreements, the Phillipses also agreed to "meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant." (Franchise Agreement § 5.13.)

22.    The Phillipses agreed that the failure to comply with the terms of the Franchise Agreements would constitute a default under the Agreements and that Little Caesar had the right to terminate the Agreements if the Phillipses failed to cure a default within the time required under the Agreements. (*Id.* § 13.3.)

9

23.    The Franchise Agreements provided for a thirty-day cure period for most defaults. (*Id.*)

24.    However, the Phillipses agreed that under certain circumstances Little Caesar had the right to immediately terminate the Franchise Agreements without providing an opportunity to cure, including if the Phillipses:

   a.    Committed three or more defaults under their Franchise Agreements (whether or not cured after notice) within a twelve month period (*id.* § 13.2.10); or

   b.    Refused to permit Little Caesar to inspect their books and records pursuant to Little Caesar's right to do so under the Franchise Agreements. (*id.* § 13.2.19, or similar provision).

25.    In addition, the Phillipses agreed that Little Caesar had the right to terminate any other Franchise Agreement between the Phillipses or any of their affiliates and Little Caesar in the event that a Franchise Agreement between the Phillipses or their affiliate and Little Caesar was terminated for a default under that agreement. (*Id.* §§ 13.2.21, 13.4.)

26.    Furthermore, under the terms of the Franchise Agreements, the Phillipses agreed that their right to use Little Caesar's proprietary marks was limited to uses authorized by the Franchise Agreements, and that "any unauthorized use thereof shall constitute an infringement." (*Id.* § 7.2.5.)

27.     They agreed that they would use Little Caesar's proprietary marks, including but not limited to its trademarks, trade names, service marks, logos, emblems, trade dress, and other indicia of origin, "only in the manner authorized and permitted by Little Caesar." (*Id*. § 7.2.1.)

28.     The Phillipses were permitted to use Little Caesar's proprietary marks only in accordance with the LITTLE CAESARS System and the related standards and specifications, which "underlie the goodwill associated with and symbolized by the [p]roprietary [m]arks." (*Id.* § 7.1.3.)

29.     And they agreed that, during the term of the Franchise Agreements and after termination, they would not take any action "which may tend to derogate or jeopardize Little Caesar's interest" in its proprietary marks. (*Id.* § 7.3.2.) They also covenanted not to "do or perform any other act injurious or prejudicial to the goodwill associated with the [p]roprietary [m]arks" and the LITTLE CAESARS System. (*Id.* § 15.2.1.)

## Defendants' Post-Termination Obligations

30.     The Phillipses agreed that in the event that their Franchise Agreements were terminated, they would "immediately cease to operate" the restaurants and would not thereafter, directly or indirectly, "represent to the public or hold [themselves] out as a present or former franchisee of Little Caesar." (Franchise Agreement § 14.1.)

31.   In addition, they agreed that they would immediately and permanently cease to use, in any manner whatsoever, any products, ingredients, trade secrets, confidential methods, procedures, and techniques associated with the LITTLE CAESARS System and/or proprietary marks. (*Id*. § 14.2.)

32.   They also agreed to return to Little Caesar all of its confidential manuals and other confidential information. (*Id*. § 14.9.)

33.   The Phillipses agreed that upon termination of the Franchise Agreements they would not use "any designation of origin or description or representation which falsely suggests or represents an association or connection with Little Caesar." (*Id* § 14.5.)

34.   And they agreed to take any actions necessary to cancel any assumed name or equivalent registration that contains the LITTLE CAESARS Proprietary Marks, as the term is defined in the Franchise Agreements, and to furnish evidence of compliance within thirty days after the termination of the Agreements. (*Id*. § 14.3.)

35.   Under the Franchise Agreements, the Phillipses agreed that upon termination, Little Caesar would have the option to purchase any or all of the furnishings, equipment, signs, fixtures, or supplies related to the operation of their franchised restaurants. In addition, they agreed to assign to Little Caesar, at its

request, any interests they had in any lease for the restaurant premises. (*Id.* §§ 14.4, 14.10.)

36.    The Phillipses also agreed to a reasonable post-termination covenant against competition, which states that they may not, directly or indirectly, for themselves or through, on behalf of, or in conjunction with any person, persons, or legal entity "own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business which is a quick or fast service restaurant engaged in the sale of pizza, pasta, sandwiches, chicken wings, and/or related products," for a continuous uninterrupted period of one year following the termination of the Franchise Agreements (or a final court order regarding the same), in any Designated Market Area of any LITTLE CAESARS restaurant, and for a continuous uninterrupted period of two years following the termination of the Franchise Agreements (or a final court order regarding the same), in the Designated Market Area(s) in which their former LITTLE CAESARS restaurants are located. (*Id.* § 15.3.) The Phillipses further agreed that breaching this and any other covenants in the Franchise Agreements would cause Little Caesar irreparable injury for "which no adequate remedy at law may be available, and agree[d] to pay all court costs and attorneys' fees incurred by Little Caesar in obtaining injunctive or other equitable legal relief . . . ." (*Id.* § 15.4.)

37.     They agreed that they would pay to Little Caesar and its affiliates all sums owed, and Little Caesar's costs, expenses, and reasonable attorneys' fees incurred by reason of any default or termination of the Franchise Agreements, or the enforcement of the Phillipses' post-termination obligations. They also agreed to pay Little Caesar liquidated damages. (*Id.* §§ 14.6, 14.7, 14.8, 15.4, 23.9.)

38.     Pursuant to the personal guarantees attached as Exhibit A to the Franchise Agreements, Defendant Jeffrey Phillips agreed to be personally bound by the covenants and obligations of the Franchise Agreements, including the obligation to pay Little Caesar and its affiliates and the obligation to comply with the post-termination covenant against competition.

39.     Pursuant to a personal guarantee attached as Exhibit A to the Franchise Agreement between Little Caesar and Defendant LCE Oakhill, LLC, Defendant Alexandra Phillips agreed to be personally bound by the covenants and obligations of that Franchise Agreement, including the obligation to pay Little Caesar and its affiliates and the obligation to comply with the post-termination covenant against competition.

### Defendants' Defaults Under Their Franchise Agreements And The Termination Of Their Franchise Agreements

40.     On July 11, 2017, Little Caesar sent the Phillipses a Notice of Default and Notice to Cure informing them that they had committed defaults under their Franchise Agreements by failing to provide to Little Caesar required quarterly

14

financial statements for the third and fourth quarter of 2016 and for the first quarter of 2017. The July 11 Notice further notified them that they were in default of their Franchise Agreements for failing to provide to Little Caesar required federal income tax returns for 2015 and 2016. Under the July 11 Notice, the Phillipses were given thirty days to cure their defaults and notified that their failure to do so could result in the termination of their Franchise Agreements.

41.    Nevertheless, the Phillipses failed to provide Little Caesar with copies of their 2015 and 2016 federal income tax returns. They also committed additional defaults under their Franchise Agreements by failing to provide to Little Caesar required quarterly financial statements for the second and third quarter of 2017. Accordingly, by Notice of Franchise Termination dated December 14, 2017, Little Caesar terminated the Phillipses' Franchises Agreements.

42.    The December 14 Notice of Franchise Termination informed the Phillipses that Little Caesar would not enforce the termination by itself, but instead would submit the matter to a court for judicial enforcement. The Phillipses elected to continue to operate their franchises pending judicial enforcement of the termination. While doing so, they continued to commit defaults under their Franchise Agreements.

43.    On February 9 and 10, 2018, Little Caesar conducted inspections of the Phillipses' franchised LITTLE CAESARS restaurants and observed operational

deficiencies that posed an unacceptable risk to customer health and safety and that otherwise deviated from Little Caesar's standards. Among other things, Little Caesars representatives observed evidence of pest infestation at some of the Phillipses' franchised restaurants, the offering for sale of products that had expired or that had not been marked for expiration, and the failure to offer for sale core Little Caesar menu items as required by Little Caesar.

44.    The Phillipses' acts breached material terms of the Franchise Agreements cited above and constituted additional grounds for their termination. Accordingly, by Notice of Default and Notice of Franchise Agreement Termination dated March 19, 2018, Little Caesar again terminated the Phillipses' Franchise Agreements based on their repeated defaults under the Franchise Agreements over the last twelve months, their failure to provide to Little Caesar required books and records (the Phillipses have not produced the required federal income tax returns to date), and the cross-default provisions contained in the Franchise Agreements.

45.    The March 19 Notice terminating the Phillipses' Franchise Agreements requested that they immediately comply with their post-termination obligations, including the obligations to cease operating their former LITTLE CAESARS franchises and using Little Caesar's trademarks, and the obligation to comply with the post-termination covenant against competition.

16

46.     The Phillipses continue to operate their LITTLE CAESARS franchises, in violation of their post-termination obligations.

47.     The Phillipses' actions have caused and continue to cause monetary damage and irreparable harm to Little Caesar, including harm to Little Caesar's reputation and goodwill.

## COUNT I
## Breach of Contract

48.     The allegations of paragraphs 1 through 47 are hereby incorporated by reference.

49.     The conduct described in this Complaint constitutes material breaches of the contractual provisions of the Franchise Agreements cited herein.

50.     These breaches constitute good cause for terminating the Franchise Agreements.

51.     As a direct and proximate result of these actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT II
## Trademark Infringement

52.     The allegations of paragraphs 1 through 51 are hereby incorporated by reference.

53.     The use in commerce of Little Caesar's trademarks and trade names by the Defendants outside the scope of the Franchise Agreements and without Little Caesar's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of the Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Little Caesar. Such unauthorized use of Little Caesar's trademarks and trade names infringes its exclusive rights in its trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

54.     The acts of the Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

55.     As a direct and proximate result of the Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT III
## Unfair Competition

56.     The allegations of paragraphs 1 through 55 are hereby incorporated by reference.

57.     The use in commerce of Little Caesar's trademarks, trade names, and trade dress by the Defendants outside the scope of the Franchise Agreements and without the consent of Little Caesar is likely to cause confusion, or to cause

mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities. Such unauthorized use of Little Caesar's trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

58.    The acts of the Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

59.    As a direct and proximate result of the Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

**COUNT IV**
**Trade Dress Infringement**

60.    The allegations of paragraphs 1 through 59 are hereby incorporated by reference.

61.    The Defendants' restaurants are identified by signs, exterior appearance, packaging, containers, and other items on which the LITTLE CAESARS proprietary marks appear in the same distinctive style and color scheme as Little Caesar uses for the pizza restaurants operated by Little Caesar's licensees.

62.    The Defendants' use of trade dress that is identical or confusingly similar to the LITTLE CAESARS trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of the Defendants'

restaurants, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their restaurants with the LITTLE CAESARS restaurants operated by Little Caesar's licensees. Such adoption of Little Caesar's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

63.    The Defendants' acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

64.    As a result of the Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.    Enter a declaratory judgment holding that Defendants' conduct violated the terms of the Franchise Agreements and constitutes good cause for terminating the Franchise Agreements;

B.    Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements as of the effective date of Little Caesar's Notice of Franchise Agreement Termination, or as otherwise provided by applicable law;

C.      Enter an order enjoining Defendants, and all those acting by, through, or in concert with them, by preliminary and permanent injunction, from using the Little Caesars trademarks, trade names, and trade dress, and from otherwise engaging in unfair competition with Little Caesar;

D.      Enter an injunctive order directing Defendants, and all those acting by, through, or in concert with them, to comply with all applicable post-termination obligations as provided in the Franchise Agreements, including but not limited to promptly paying all sums owed to Little Caesar and its affiliates, complying with the post-termination noncompete, complying with any request from Little Caesar to purchase any equipment or other assets of the franchise, and taking all steps to transfer their leasehold interests in the franchise to Little Caesar or its designee in the event that Little Caesar elects to exercise any rights it or any of its affiliates or subsidiaries might have in such interests;

E.      Award Plaintiffs judgment against Defendants for the damages Plaintiffs have sustained and the profits Defendants have derived as a result of their trademark infringement, trade dress infringement, and unfair competition, assessing such damages in a separate accounting procedure, and then trebling those damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

21

F.      Enter judgment in favor of Plaintiffs for the damages they have suffered, including liquidated damages as provided for by the Franchise Agreement, as a result of Defendants' conduct, plus prejudgment interest allowed by law;

G.      Award Plaintiffs their costs and attorneys' fees incurred in connection with this action, pursuant to the Franchise Agreements and Section 35 of the Lanham Act, 15 U.S.C. § 1117, including the costs incurred in conducting any and all necessary inspections; and

H.      Award Plaintiffs such other relief in its favor as this Court may deem just and proper.

Respectfully submitted,

/s/ *Larry J. Saylor*
Larry J. Saylor (P28165)
Kimberly A. Berger (P56165)
MILLER, CANFIELD, PADDOCK
    & STONE P.L.C.
150 West Jefferson Avenue, Suite 2500
Detroit, Michigan  48226
Telephone:   (313) 496-7986
Facsimile:   (313) 496-8454
saylor@millercanfield.com
berger@millercanfield.com

Robert L. Zisk (admitted in E.D. Mich.)
Stephen J. Vaughan (admitted in E.D. Mich.)
Justin L. Sallis (admitted in E.D. Mich.)
GRAY, PLANT, MOOTY, MOOTY
  & BENNETT, P.A.
The Watergate
600 New Hampshire Avenue, N.W. – Suite 700
Washington, D.C.  20037
Telephone:   (202) 295-2200
Facsimile:    (202) 295-2250
robert.zisk@gpmlaw.com
stephen.vaughan@gpmlaw.com
justin.sallis@gpmlaw.com

Dated: April 25, 2018               *Attorneys for Plaintiffs*

31346033.1\053322-00055